JOHNSON et al. v. STAENGLEN et al.

(Circuit Court of Appeals, Fifth Circuit.   February 8, 1898.)

No. 531.

**1. CONTRACT—VALIDITY—CONSIDERATION.**

An agreement containing rules which are to govern in the sale and shipment of cotton from one of the parties to the other is not invalid because it neither binds one party to ship nor the other to receive cotton, but is binding so far as sales and shipments are made.

**2. PLEADING—AMENDMENT—NEW CAUSE OF ACTION.**

Where a petition was based on a written contract alleged to have been made between plaintiffs and defendants, an amended petition alleging the same contract to have been entered into between defedants and one member of plaintiff firm, and afterwards assumed by plaintiffs with defendants' consent, does not state a new cause of action, the breach relied on being the same.

**3. CONTRACT—ACTION FOR BREACH—CONDITION PRECEDENT.**

Where defendants sold and shipped plaintiffs certain cotton under a guaranty of weight and grades, contracting to promptly adjust any differences in those respects shown by inspection in Liverpool, plaintiffs are not required to prove payment of losses arising therefrom before being entitled to recover for a breach of the contract.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

This was an action by Staenglen & Muller against S. J. T. Johnson & Co. to recover for a deficiency in the weights and grades of certain cotton bought of defendants under a written contract.   There was judgment for plaintiffs, and defendants bring error.

R. S. Neblett, for plaintiffs in error.

John W. Thompson, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge.   It appears from the record in this case that on May 10, 1888, Staenglen & Muller brought suit against S. J. T. Johnson & Co., in the circuit court of the United States for the Northern district of Texas, at Dallas.   In the original petition, plaintiffs set out the following writing:

"S. J. T. Johnson & Company, Corsicana, Texas—Dear Sirs: I beg to hand you herewith certain rules which you will observe in shipping cotton to me. I shall understand any offers you may make me as made on the terms included in the following rules, and you will please understand all orders I may send you as subject to the same terms, viz.:

"(1) All shipments are to be classed in perfectly even running lots of 50 and 100 bales.

"(2) Each lot must have a separate and distinct shipping mark.

"(3) Every bale is to be counter marked 'Staenglen.'

"(4) Every bale must be sampled on its lower side, and samples must be sent to me promptly by express.

"(5) With each invoice I must receive a separate note of weight for each mark signed by us (there being no sworn weighers here).

"(6) Reimbursement is always at sight on me with bill of lading attached.

"(7) When I limit cents f. o. b., it is understood that you draw on me with the ship's bill of lading attached.

"(8) When I limit cents, cost, and freight, it is understood that you draw on me with through bill of lading attached.

"(9) Marine insurance is covered by me, and includes all risks from the time the shipment is put on the cotton at the point to which my order was sent.

"(10) All bills of lading are to be taken out in my name, and made to the order of the bank through whom your draft on me is negotiated, and indorsed at the bank.

"(11) All orders and offers between us are understood for Liverpool classification, which you agree to guaranty. Any allowance made in the customary way by Liverpool arbitration you agree to settle promptly.

"(12) You guaranty loss in weight not to exceed 7 per cent., taking the net weight in Europe against the gross weight invoiced by you, and you agree to settle promptly.

"(13) The weight charged by you to me must not include more than six bands to the bale.

"(14) If nothing else is stipulated, prompt shipment is understood; i. e. invoice must be sent within five days of execution of order.

"(15) When I give an order for the Cotton Company, please substitute under 3 'Cotton Company,' and under 10 take out bill of lading in the name of Cotton Co. All other conditions remain as above.

"By your attention to the above, you will oblige,

    "Yours truly,                                      Staenglen & Muller.

"We hereby agree to conform to the above.

    "[Signed]                                      S. J. T. Johnson & Co.

"Corsicana, Texas, November 13th."

After setting out this paper, the plaintiffs allege that during the cotton season of 1886–87 they purchased from the defendants large and different lots of cotton, which were sold by the plaintiffs at different European points upon the weights and classifications on which defendants sold to them, and that at such European points, when the cotton was exposed to inspection by the purchasers, it lost in grade, weights, and quality. Plaintiffs further allege that, by reason of such loss in grade, weights, and quality, they sustained loss of large amounts of money which they paid to parties in Europe to whom they had sold. Plaintiffs' petition then proceeds to set out the grounds upon which they seek to hold the defendants liable to them for such loss, relying upon the agreement above set out, written by them, and assented to by the defendants, as containing the grounds for such liability. On May 22, 1891, plaintiffs filed their first amended original petition, in which they set out in detail the particular lots of cotton on which this loss occurred, identifying the same, and showing the exact amount of loss in grade, and also in weight and quality; showing, also, the arbitration allowance made in Liverpool. This amended petition was accompanied by six exhibits, in which these details were given with what is claimed, and with what seems to be, great particularity and clearness.

Defendants answered, setting up various defenses, the only one of which material at this point is the following:

"Defendants claim that the paper above set out, to which they assented on November 13, 1886, was written to them by G. E. Staenglen, and not by Staenglen & Muller, and that the writing as set out in plaintiffs' petition was not the writing to which defendants had assented, and was not the agreement as to weights, settlements, etc., between the parties."

The case came on for trial on June 6, 1892. It being made to appear that the contract was originally signed "G. E. Staenglen," and not "Staenglen & Muller," plaintiffs took a nonsuit, and were after-

wards allowed by the court to reinstate their case. Upon the reinstatement of the case, plaintiffs filed their second amended original petition, in which they alleged that the contract dated November 13, 1886, was executed by G. E. Staenglen, and not Staenglen & Muller. They alleged that the contract was drawn on a blank prepared for contracts to be made between G. E. Staenglen and persons from whom he expected to buy cotton; that thereafter G. E. Staenglen and C. Muller became partners; and that the said blank was stamped with the firm name over the name of "G. E. Staenglen," at the top of the blank and also in the signature. They then set out the same cause of action as set out in their former pleading. Afterwards, on May 15, 1893, plaintiffs filed their third amended petition, in which they again set out the foregoing contract, in the same words and figures that it had before been pleaded, except they alleged that the said contract was made between Staenglen, for the benefit of Staenglen & Muller, and S. J. T. Johnson & Co., and that it was signed "G. E. Staenglen," instead of "Staenglen & Muller." They further alleged that for a long time prior to November, 1886, G. E. Staenglen had been engaged in the business of buying cotton, and that, on or about November 1st, G. E. Staenglen and C. Muller entered into a partnership under the firm name of Staenglen & Muller, for the purpose of carrying on a business similar to that in which Staenglen had been engaged; that the formation of the firm was not prominently announced, nor any business done in said firm name until about November 15, 1886; that from the formation of said firm up to about November 15, 1886, all the contracts made by said firm were made in the name of Staenglen, and that among the contracts so made was the one with Johnson & Co.; that on or about November 15, 1886, Staenglen & Muller issued a circular bearing date of November 1st, in which they announced the formation of the partnership, that the firm had succeeded to the business of G. E. Staenglen, and that Staenglen & Muller had assumed and would carry out all contracts made by Staenglen pertaining to the cotton business. They alleged that a copy of this circular was sent to all persons having contracts with Staenglen, among them S. J. T. Johnson & Co., which circular Johnson & Co. received about the 18th day of November, 1886, and agreed to the terms thereof. Plaintiffs further alleged substantially that, after this, all business that was done was between Johnson & Co. and Staenglen & Muller; that goods were invoiced to Staenglen & Muller, and drafts drawn on Staenglen & Muller, said drafts being paid by that firm. It is further alleged that some one, without the knowledge of Staenglen or Muller, had, with a stamp used in the office, stamped the name of "Staenglen & Muller" over the name of "G. E. Staenglen." Defendants then filed additional answers, in which they invoked the statute of limitation, and also called in question the sufficiency of plaintiffs' allegations in reference to the alteration of the contract, and also filed a plea of non est factum. The case came on for trial again in January, 1896, when all the exceptions to the plaintiffs' third amended original petition were presented and overruled. The case then proceeded to trial, and resulted in a verdict in favor of the plaintiffs for $10,524.97. The original and amended motions for

new trial were presented and overruled in March, 1896. Defendants' bill of exceptions was allowed in May, 1896, and their assignments of error filed in June thereafter.

Without considering in detail all the exceptions and assignments of error in this case, we will consider such as seem to be controlling. It is urged by the plaintiffs in error that the contract of November, 1886, containing rules which were to govern as between the parties thereto in the purchase, shipment, and sale of cotton, is unilateral, in that Johnson & Co. were bound by it, and the other party or parties to it were not so bound. It is said that there is no provision in this instrument by which Johnson & Co. could compel either Staenglen or Staenglen & Muller to receive any number of bales of cotton; nor is there any provision that the agreement should continue for any length of time. If this be true, it applies to both parties. There is no provision in the contract by which Staenglen & Muller could compel Johnson & Co. to ship any number of bales of cotton, so far as can be gathered from its terms. Indeed, the writing seems to be rather a set of rules which are to govern the purchase, shipment, and payment for cotton bought in this country, and its sale, classification, etc., in Europe. We are satisfied that this objection to this agreement is not well taken.

It is further urged that this contract, having been originally made with G. E. Staenglen, could not, under the facts, be made the basis for, or support, a suit in favor of Staenglen & Muller. There seems to be sufficient evidence to show that Johnson & Co. knew that they were dealing with Staenglen & Muller, and that Staenglen & Muller had succeeded to the business of G. E. Staenglen. There were, of course, some rules to govern Johnson & Co. in their purchases and shipments to Staenglen & Muller, and such rules were necessarily those which had been agreed upon between Johnson & Co. and Staenglen. Indeed, it is shown by the record that a letter was written in July, 1887, to Staenglen & Muller, by S. J. T. Johnson, in which Johnson stated: "We will abide by the contract between us of November 13th and subsequent conditions made in writing between us." We think the court held correctly that the effect of all that transpired between the parties was sufficient to make the agreement of November, 1886, after Johnson & Co. had knowledge of the succession of Staenglen & Muller to the business of G. E. Staenglen, an agreement between Johnson & Co. and that firm, and of the same force and effect between the firms as it had as between Johnson & Co. and Staenglen individually.

It is further insisted that the cause of action set up in defendants' second amended original petition, after plaintiff had taken a nonsuit and the case had been reinstated, was barred by the statute of limitation. The cause of the action was the same as set out in the pleadings after the reinstatement of the case as had been made by the pleadings prior to the nonsuit. The cause of the action was the loss sustained by the plaintiffs in weight, grade, and quality of cotton as classified and allowed in Europe, and the agreement of November, 1886, was set out as the basis or foundation for the claim of Johnson & Co.'s liability for this loss. If the court below ruled correctly—and we hold that it did—in allowing the contract to go in evidence as one which,

under the facts, pleadings, and evidence, could be set up by Staenglen & Muller as effective and binding between Staenglen & Muller and Johnson & Co., then there was no such difference between the case before and after the nonsuit as would make the latter a new cause of action. Staenglen & Muller were the plaintiffs in the case as made in both instances, and Johnson & Co. were the defendants, the only difference in the two cases being that in the first instance the agreement was declared on as one that had been made originally between Johnson & Co. and Staenglen & Muller, and in the reinstated case as one made originally between Johnson & Co. and G. E. Staenglen, and assumed by Staenglen & Muller with the assent and approval of Johnson & Co. We therefore find no error in the refusal of the court below to sustain the plea of the statute of limitations.

By sections 11 and 12 of the contract of November, 1886, it was provided as follows:

"(11) All orders and offers between us are understood for Liverpool classification, which you agree to guaranty. Any allowance made in the customary way by Liverpool arbitration you agree to settle promptly.

"(12) You guaranty loss in weight not to exceed 7 per cent., taking the net weight in Europe against the gross weight invoiced by you, and you agree to settle promptly."

Plaintiffs in error contend that the evidence on which the verdict against them was rendered was not such as should have been admitted, on the ground that it was not the best evidence. An examination of the record, so far as it throws light on the question, does not sustain this contention. In addition to this, it was claimed that there was a conflict between the testimony of the plaintiffs' witnesses Brown and Welton, the former testifying to what constituted "gross landed weight" of cotton, and the latter testifying to what constituted "net weight." We are of the opinion that it would have been error for the court to have given the instruction requested by the defendants, even if there had been a conflict between the two witnesses, but it is not at all clear that there was any such conflict; neither do we think that the court erred in refusing to rule out this testimony on the ground that it was not the best evidence. So far as we can gather from an examination of the record, the testimony objected to was that of men testifying of their own knowledge to weights and classifications, facts and figures coming under their own observation and of their own knowledge.

It is also urged that the plaintiffs should have shown that they had paid the loss before they could recover it from the defendants. We do not see the force of this position. Staenglen & Muller had paid Johnson & Co. according to Johnson & Co.'s weights and classifications, as shown by their invoices, and then had sustained certain losses, in addition to the allowances provided for in their agreement, on the sale of cotton in Europe. So that we do not see clearly how the question of payment of these losses is in the case, but in any view of the matter, as we understand the theory on which the case proceeds, Staenglen & Muller had paid to Johnson & Co., for cotton bought and shipped by the latter for the former, certain amounts in excess of the correct amounts which should have been paid for under the terms of their

agreement; and as to this, by articles 11 and 12 of the agreement, they undertook to reimburse the plaintiffs, and for that the suit proceeds.

For the reasons given, we are satisfied with the judgment of the court below, and the same is affirmed.